UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 20-98-DLB-CJS

MICHAEL EVANS                                                                                   PLAINTIFF

v.

NOVOLEX HOLDINGS, LLC, et al.                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

WADDINGTON N.A., INC.                                                  THIRD-PARTY PLAINTIFF

v.

MICHAEL EVANS                                                        THIRD-PARTY DEFENDANT

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

**I.   INTRODUCTION**

This matter is before the Court on Plaintiff/Third Party Defendant Michael Evans's Motion to Dismiss Counterclaim and Third-Party Claim. (Doc. # 48). Plaintiff/Third Party Defendant's Motion has been fully briefed, (Docs. # 59 and 64), and is now ripe for the Court's review. Additionally, Counterclaimants Novolex Holdings, LLC ("Novolex") and The Waddington Group ("TWG"), as well as Third-Party Plaintiff Waddington North America, Inc. ("Waddington") filed a Motion for Leave to File Surresponse (Doc. # 68), to which Evans filed a Response (Doc. # 69). For the reasons set forth herein, Plaintiff/Third Party Defendant's Motion to Dismiss Counterclaim and Third-Party Claim (Doc. # 48) is

1

**granted** and Novolex, TWG, and Waddington's Motion to File Surresponse (Doc. # 68) is also **granted**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2021, the Court granted in part and denied in part the Motion to Dismiss filed by Defendants Novolex and TWG. (Doc. # 39). Thereafter, on June 17, 2021, Defendants Novolex and TWG answered Plaintiff Michael Evans's ("Evans") Complaint and asserted counterclaims against Evans. (Doc. # 45). Third-Party Plaintiff Waddington also brought a claim against Evans. (*Id.*). Defendants Novolex and TWG bring a claim against Evans for interference with a contract by way of hindrance (*id.* at 16); Third-Party Plaintiff Waddington brings a breach of contract claim against Evans (*id.* at 16-17); and Novolex, TWG, and Waddington bring a declaratory judgment count regarding forfeiture of a payment under the Special Incentive Plan ("SIP"). (*Id.* at 17-18).

Although the Court has detailed the factual background in this case once before (*see* Doc. # 39), a brief description of the relevant facts to the counterclaims and third-party claim is necessary. Plaintiff/Third-Party Defendant Evans was employed by TWG as its President and CEO until his retirement in 2017. (Doc. # 1 ¶¶ 7, 13).

In July of 2015, Waddington became a subsidiary of TWG. (Doc. # 45 ¶ 11).[1] At this time, Evans entered into an employment agreement with Waddington ("Evans Employment Agreement"), which outlined Evans's obligations regarding confidential and proprietary information of Waddington. (*Id.* ¶¶ 12-17). In January of 2017, at his retirement, Evans entered into a separation agreement ("Evans Separation Agreement")

---

[1]     When the Court references paragraphs from Novolex and TWG's combined answer, counterclaim, and third-party claim (Doc. # 45), it is referencing paragraphs under the title "COUNTERCLAIMS," found in the second part of the document.

with Waddington that similarly outlined Evans's continuing obligation regarding confidential information. (*Id.* ¶ 26).

In April of 2016, TWG's parent-corporation, Jarden Corporation, was acquired by Newell Brands. (Doc. # 1 ¶ 12). In June of 2017, Newell Brands sold TWG to Novolex. (*Id.* ¶ 14). As part of the sale, Novolex assumed the obligations of Newell under the Special Incentive Plan ("SIP"), which was meant to compensate TWG's management for achieving certain performance targets. (Docs. # 1 ¶¶ 9, 15 and 45 ¶ 43). After Evans's retirement, he was still an eligible participant under the SIP. (Docs. # 1 ¶ 13 and 45 ¶ 18). In March of 2019, eligible SIP participants, including Evans, received approximately 60% of their awards under the SIP. (Doc. # 45 ¶ 44). For Evans, this award totaled approximately $1.5 million. (*Id.* at 45).

After Evans's retirement, Novolex terminated the new President and CEO of TWG, Wurzburger, for cause. (Doc. # 1 ¶ 16). Evans had argued that under the terms of the SIP agreement, Novolex and TWG were required to return the bonus forfeited by Wurzburger to the SIP award pool to be redistributed among the remaining SIP participants, including Evans. (*Id.* ¶¶ 19-20). The Court previously determined that Novolex and TWG were not required to return the bonus to the SIP award pool based on the plain language of the agreement. (Doc. # 39 at 9-12). However, Evans also successfully argued that he had a plausible cause of action against Novolex and TWG for unilaterally changing performance targets under the SIP. (*Id.* at 12-14).

### III. ANALYSIS

#### A. Standard of Review

Granting a motion to dismiss is appropriate if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Further, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, a court should "construe the complaint in the light most favorable to the plaintiff" and "accept all well-pleaded factual allegations as true." *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (citing *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570). However, "mere conclusory statements, do not suffice" and legal conclusions "must be supported by factual allegations." *Ashcroft*, 556 U.S. at 678-79.

#### B. Interference with Contract by way of Hindrance

Counterclaimant TWG first brings a count for interference with contract by way of hindrance against Evans. (Doc. # 45 ¶¶ 52-58). Under this Count, TWG alleges that Evans intentionally interfered with the contract between TWG and SIP participants by "communicating with SIP Participants, spreading misinformation, and attempting to malign the SIP Participants against TWG and Novolex." (*Id.* ¶ 54). Evans, in turn, argues that this type of claim does not exist in Kentucky common law. (Doc. # 48 at 4-5).

4

The Restatement (Second) of Torts § 766A adopted interference with contract by way of hindrance in 1979, which states "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him." TWG acknowledges that Kentucky has yet to adopt this specific contract claim. (Doc. # 59 at 6 n.2). As recently as 2019, the Kentucky Court of Appeals explicitly stated that it "has yet to adopt [Restatement (Second) of Torts § 766A]." *Littrell v. Bosse*, 581 S.W.3d 584, 587 (Ky. Ct. App. 2019).

This Court finds that "it is not the function of the federal court to expand the existing scope of state law." 19 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4507 (3d ed. 2010). Instead, it is a federal court's responsibility to "decide such unsettled issues of state law as a Kentucky state court would." *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982). The Sixth Circuit has explicitly stated that "[f]ederal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004). Similarly, "[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path." *Id.* at 577 (internal quotations omitted) (alterations in original). In the absence of guidance from Kentucky state courts, this Court, sitting in diversity jurisdiction, finds that it would be an overreach of its power to institute a tort in Kentucky that Kentucky courts have not first adopted and have not indicated that they would adopt given the opportunity.

This finding is further bolstered by the reality that "Kentucky courts have been very cautious in expanding unduly the tort remedies available to those in contractual relationships." *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995) (refusing to adopt § 766A on behalf of Kentucky courts). An analysis of opinions by Kentucky courts referencing § 766A also supports this outcome. In 2013, the Kentucky Court of Appeals agreed with the court's prediction in *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. at 1079, that "Kentucky would not adopt the Restatement (Second) of Torts § 766A." *Atmos Energy Corp. v. Honeycutt*, Nos. 2011-CA-601-MR and 2011-CA-783-MR, 2013 WL 285397, at *18 (Ky. Ct. App. Jan. 25, 2013). Similarly, in *Littrell v. Bosse*, the Kentucky Court of Appeals acknowledged that Kentucky had not yet adopted § 766A. 581 S.W.3d at 587. The *Littrell* Court went on to say "[w]hether the failure to do so is intentional or whether Kentucky courts simply have not had occasion to do so is the subject of debate between counsel[,]" but did not give any indication as to what route Kentucky courts may take on the issue. *Id.* It seems unlikely from this Court's vantage point that the Kentucky Supreme Court would adopt § 766A based on the opinions of the Kentucky Court of Appeals.

Further, creating an entirely new cause of action "greatly expands liability" and this is even more true in the context of § 766A. *Combs*, 354 F.3d at 577. Other courts, in discussing § 766A, have commented that its language is far too broad and speculative, thereby expanding liability a step too far. *See CMI*, 918 F. Supp. at 1079 ("The actual language of § 766A is so all encompassing and vague that to adopt it directly would cause tremendous confusion without creating a clear societal benefit."); *Price v. Sorrell*, 784 P.2d 614, 616 (Wyo. 1989) (noting that § 766A does not require a breach, and instead

6

only that performance becomes more expensive and burdensome, and this "element of proof is too speculative and subject to abuse to provide a meaningful basis for a cause of action."); *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 251, 281 (3d Cir. 2010) (holding Delaware would not adopt § 766A due to the same reasoning found in *Price v. Sorrell*). Therefore, if this Court were to adopt § 766A, it would be ignoring Sixth Circuit precedent which favors "an interpretation of [state] law which reasonably restricts liability," instead of one that expands liability. *Combs*, 354 F.3d at 577. For these reasons, this Court believes it would be inappropriate to create a new cause of action in Kentucky common law and subject Evans to it. Therefore, Evans's Motion to Dismiss the interference with a contract by way of hindrance claim is **granted**.

### C. Breach of Contract

Next, Third-Party Plaintiff Waddington alleges that Evans breached both his Employment Agreement and Separation Agreement. (Doc. # 45 ¶¶ 59-63). Specifically, Waddington alleges that Evans violated Section 7(a) of his Employment Agreement and Section 13 of his Separation Agreement. (*Id.* ¶¶ 60-61). In response, Evans argues that Waddington leaves out relevant context of the Agreements and has not adequately alleged facts to support a breach of contract claim. (Doc. # 48 at 8-11). The Court agrees that Waddington has failed to adequately allege a claim for breach of contract.

Section 7(a) of Evans's Employment Agreement states in relevant part:

> [T]he Employee shall not, either during or subsequent to the term of this Agreement, use, reveal, report, publish, transfer or otherwise disclose to any person, corporation or other entity, any of the Confidential Information without the prior written consent of the Company, except to responsible officers and employees of the Company and other responsible persons who are in a contractual or fiduciary relationship with the Company and who have a need for such information for purpose in the best interests of the Company . . . .

(Doc. # 51-1 at 3).  The operative phrase here requires that Evans does not "use, reveal, report, publish, transfer or otherwise disclose to any person" Waddington's confidential information.  (*Id.*).  Similarly, Evans's Separation Agreement states: Evans must "comply with Paragraph 7 of [his] Employment agreement for five years after the Termination Date [January 2, 2017] as to Confidential Information."  (Doc. # 45 ¶ 61).

In its Complaint, Waddington alleges that "upon information and belief, [Evans] discussed and shared such proprietary and confidential information with individuals outside the company."  (*Id.* ¶ 62).  However, the Complaint is otherwise devoid of any factual allegations regarding what confidential information Evans shared and with whom he allegedly shared this confidential information.  Instead, the Complaint focuses on the fact that Evans "inappropriately" *obtained* Confidential Information, instead of *using* or *disclosing* Confidential Information, which is not prohibited by the plain terms of his Employment Agreement.  (*See id.* ¶¶ 9, 32, 34-37).  Nor does Waddington allege that Evans disclosed confidential information to others outside "officers and employees of the Company and other responsible persons who are in a contractual or fiduciary relationship with the Company."  (Doc. # 51-1 at 3).

Waddington argues that it does not have to plead the facts underlying its breach of contract claim "with particularity" because it is not asserting a fraud claim.  (Doc. # 59 at 9).  Instead, Waddington argues that it only must allege "enough [factual allegations] to raise a right to relief above the speculative level."  (*Id.*) (quoting *Red Hed Oil, Inc. v. The H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017)).  Though this may be true, merely stating the elements of a claim does not rise to this level.  While "legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Ashcroft*, 556 U.S. at 678-79. Under Federal Rule of Civil Procedure 8(a), a plaintiff is required to plead "a short and plain statement of the claim showing that the pleader is entitled to relief," which should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Waddington's claim is supported by a single sentence—"upon information and belief, [Evans] discussed and shared such proprietary and confidential information with individuals outside the company . . . ." (Doc. # 45 ¶ 62). This single sentence clearly does not put Evans on notice of what confidential information he allegedly disseminated or to whom he allegedly gave this confidential information. This type of "conclusory allegation[] . . . will not suffice for a complaint to survive a Rule 12(b)(6) motion." *Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 Fed. App'x 438, 441 (6th Cir. 2014). Even under the basic pleading standard provided in *Iqbal*, Waddington's claim fails. Therefore, Evans's Motion to Dismiss Waddington's breach of contract claim is **granted**.

D. **Declaratory Judgment**

Finally, Novolex, TWG, and Waddington allege that they are entitled to declaratory judgment regarding the forfeiture of Evans's 2019 SIP award as well as future SIP award payments. (Doc. # 45 ¶¶ 64-68). A declaratory judgment allows parties "to have their rights and obligations declared without being forced to act improperly and initiate litigation after an injury has occurred." *Jarvis v. Nat'l City*, 410 S.W.3d 148, 153 (Ky. 2013). There must be a justiciable controversy for the Court to evaluate a declaratory judgment action because courts "do[] not render advisory opinions." *Id.* While there may be a justiciable controversy in the present case, Novolex, TWG, and Waddington allege that Evans must

9

forfeit his past and future SIP awards due to failure to comply with his Employment Agreements. (Doc. # 45 ¶ 65-68). Under the SIP Agreement, an award "will be forfeited by the Participant if Participant fails to comply with any of the Jarden Employment Documents in any material manner, regardless of whether such Participant's employment is terminated . . . ." (*Id.* ¶ 65). As discussed in detail above, *supra* Section III.C, Waddington did not plausibly allege that Evans breached his Employment or Separation Agreement, and therefore, there is no basis upon which Novolex, TWG, and Waddington could force Evans to forfeit his SIP awards. For these reasons, Evans's Motion to Dismiss the declaratory judgment action is **granted**.

## IV.   CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** as follows:

(1)   Counterclaimants Novolex Holdings, LLC, and The Waddington Group, Inc., and Third-Party Plaintiff Waddington North America, Inc.'s Motion to File a Surresponse (Doc. # 68) is **GRANTED**;

(2)   Plaintiff/Third Party Defendant Michael Evans's Motion to Dismiss Counterclaim and Third-Party Claim (Doc. # 48) is **GRANTED**; and

(3)   Counterclaimants Novolex Holdings, LLC, and The Waddington Group, Inc., and Third-Party Plaintiff Waddington North America, Inc.'s claims against Plaintiff/Third Party Defendant Michael Evans are **DISMISSED**.

This 22nd day of March, 2022.



Signed By:
*David L. Bunning*   DB
United States District Judge