UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 20-98-DLB-CJS

MICHAEL EVANS                                                                                      PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

NOVOLEX HOLDINGS, LLC, et al.                                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \*

## I.   INTRODUCTION

This matter is before the Court upon two motions filed by Defendants Novolex Holdings, LLC and The Waddington Group, Inc.: a Motion to Dismiss the Amended Complaint (Doc. # 100), and a Motion for Leave to Seal a Document (Doc. # 105). Both motions have been fully briefed (Docs. # 104, 106, 109, and 110), and are accordingly ripe for the Court's review. The Court has reviewed the motions and associated filings, and for the reasons stated herein, Defendants' Motion to Dismiss the Amended Complaint (Doc. # 105) is **granted in part**, allowing Plaintiff's breach of contract claim to proceed on one legal theory but not another, and Defendants' Motion for Leave to Seal a Document (Doc. # 105) is **denied as moot**, with the proposed sealed document being stricken from the record.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this lawsuit are complex and have been outlined twice by the Court in previous Orders. (*E.g.*, Docs. # 39 and 94). Because this case is now before the Court on an Amended Complaint (Doc. # 97) filed almost two years after the original

1

Complaint, the Court will begin here with the case's procedural history, and then re-tell the facts as they are relevant to the instant motions.  This lawsuit was filed in July 2020 by Plaintiff Michael Evans against Novolex Holdings, LLC ("Novolex"), and The Waddington Group, Inc. ("TWG").  (Doc. # 1).  Mr. Evans' original Complaint made claims related to alleged non-payment of bonus incentive money under a Special Incentive Plan ("SIP") that Mr. Evans participated in while he was TWG's Chief Executive Officer ("CEO").  (*See id.*).  In May 2021, the Court granted in-part a Motion to Dismiss filed by Defendants, allowing only a breach of contract claim to proceed on one legal theory.  (*See* Doc. # 39 at 16).  One month later, Defendants filed an Answer and asserted counterclaims against Mr. Evans, in addition to joining Waddington North America, Inc ("WNA") as a party to bring its own claims against Mr. Evans.  (Doc. # 45).  The Court later granted a Motion to Dismiss filed by Mr. Evans (Doc. # 48), and accordingly dismissed all of the counterclaims and other claims by Defendants and WNA against Mr. Evans.  (Doc. # 94).

Since then, the parties have proceeded in a litany of non-dispositive motion practice before the presiding Magistrate Judge.  (*See, e.g.*, Doc. # 95).  As part of that motion practice, Mr. Evans filed a Motion for Leave to file an Amended Complaint (Doc. # 81), and the Magistrate Judge granted that Motion.  (Doc. # 95).  The Amended Complaint was filed in March 2022.  (Doc. # 97).  Defendants' second Motion to Dismiss (Doc. # 100) followed shortly thereafter, in addition to their Motion for Leave to Seal a Document (Doc. # 105).  Before moving into the analysis of those motions, the Court will detail the facts of this case as set forth in the Amended Complaint.

TWG is a corporation with its principal place of business in Covington, Kentucky. (Doc. # 97 ¶ 3).  Mr. Evans served as the CEO of TWG for more than 20 years, until his retirement at the beginning of 2017.  (*Id.* ¶¶ 7, 13).  Shortly before Mr. Evans' retirement and in the years immediately following, TWG's ownership changed multiple times in a series of mergers and acquisitions.  (*See id.*).  First, in July 2015, TWG was acquired by Jarden Corporation.  (*Id.* ¶ 8).  After the Jarden acquisition, TWG's new ownership created a Special Incentive Plan ("SIP") "to incentivize and retain certain executives and employees" of TWG.  (*Id.* ¶ 9).  In essence, the SIP was a bonus arrangement which incentivized TWG executives to ensure that the company performed well, as the SIP allowed for "awards . . . tied to the financial performance" of the company from 2016 through 2019.  (*Id.*).  The SIP took effect in March 2016, and Mr. Evans negotiated the SIP with Jarden on behalf of TWG.  (*Id.* ¶ 10).  The bonuses to be paid under the plan were capped at $25 million in total, and the money "was allocated to individual plan participants by separate agreements" with each participant.  (*Id.* ¶ 11).

In April 2016, one month after the SIP took effect, Jarden was acquired by and merged into Newell Brands, Inc., "which assumed Jarden's obligations under the SIP." (*Id.* ¶ 12).  Mr. Evans retired from TWG less than one year later, at the beginning of 2017, but remained a participant in the SIP, as the plan ran through 2019, and so Mr. Evans was supposedly still eligible to receive funds under the SIP in exchange for TWG's sustained financial performance.  (*See id.* ¶ 13).  John Wurzburger took over as CEO after Mr. Evans' retirement, and under Wurzburger, TWG's ownership again changed, as Newell sold TWG to Novolex in June 2018.  (*Id.* ¶¶ 13, 14).  As part of the sale, Novolex assumed Newell's role (acquired from Jarden) in administering the SIP, which had one

3

year of remaining effect.  (*Id.* ¶ 15).  According to Mr. Evans, Newell agreed to sell the company for a reduced price to account for pro-rated SIP bonuses that were accrued but had yet to be paid – which Novolex would be responsible for paying.  (*Id.* ¶ 14).  Novolex paid "a portion" of the pro-rated bonuses in March 2019, but according to Mr. Evans, they should have paid more.  (*Id.* ¶ 18).

Soon after its acquisition became final, Novolex fired Wurzburger, and "avoided paying [Wurzburger] more than $3,000,000 in pro-rated SIP bonuses" because Wurzburger was fired for cause, thus removing him from SIP eligibility.  (*Id.* ¶¶ 17, 19).  According to Mr. Evans, these funds due to Wurzburger were "forfeited" and thus eligible for redistribution to other participants "in amounts determined by the Administrative Committee."  (*Id.* ¶ 19).  But Mr. Evans alleges that the Administrative Committee did not make that decision – Novolex's CEO did, and did so in a unilateral manner not authorized by the SIP.  (*See id.* ¶ 24).  In support of that allegation, Mr. Evans points out that through 2019, the Administrative Committee's minutes "made no reference to the return, or other fate of Wurzburger's award, despite this amount having been paid by Newell in the form of a purchase price reduction."  (*Id.* ¶ 26).

Mr. Evans also alleges that Novolex "gutt[ed]" the Administrative Committee and changed its composition to make decisions "that benefited only Novolex [and] did not protect [TWG} or the Participants[.]"  (*Id.* ¶ 28).  After Novolex's acquisition of TWG, the Administrative Committee structure was changed, and the SIP itself was amended several times.  (*Id.* ¶¶ 16, 22).  More specifically, the Committee's membership was changed to remove any SIP participants from the Committee, when the committee had two participant members "by design" when it started in 2016.  (*Id.* ¶ 20).  According to Mr.

4

Evans, these changes were "calculated, eliminated any balance on the Committee, and vested effective control of the two person 'committee' in the Novolex CEO." (*Id.* ¶ 23). In Mr. Evans' words, if there had been "a functioning Administrative Committee acting in the best interests of the SIP participants and the business," the forfeited Wurzburger funds "would have been retuned to the pool" and paid to other eligible participants, including Mr. Evans himself. (*Id.* ¶ 31).

But in addition to the forfeited funds, Evans also alleges that he should have received other bonus money under the SIP that he was entitled to receive, independent of the forfeited bonuses. (*Id.* ¶ 32). After the March 2019 payment, Mr. Evans and other SIP participants received no further payments from Novolex, as Novolex "revised the performance target on which the remaining SIP awards were to be calculated," and "informed the eligible participants, including Evans, that they had failed to meet the award target and that no further payment was due[.]" (*Id.* ¶¶ 32, 33). Mr. Evans alleges that these revisions were "done improperly and without written notification to the eligible participants," and that he and other participants are entitled to additional SIP payments. (*Id.* ¶¶ 32, 34).

### III.   ANALYSIS

#### A.   Motion to Dismiss (Doc. # 100)

Only one count is contained within Mr. Evans' Amended Complaint: breach of contract. (*Id.* at 6). More specifically, that count has two underlying theories: first, that Defendants incorrectly withheld the forfeited Wurzburger funds; and second, that Defendants wrongfully withheld remaining incentives owed to Mr. Evans, independent of the forfeited funds, after improperly revising the SIP's performance targets. (*Id.*). Notably,

5

these theories are the same as those underlying the breach of contract claim contained within the original Complaint, which were subject to analysis within the Court's May 2021 Memorandum Opinion and Order adjudicating Defendants' first Motion to Dismiss. (Doc. # 39). In that Order, the Court dismissed the breach of contract claim insofar as it related to the forfeited funds, but allowed the claim to proceed insofar as it related to the revised performance targets. (*Id.*). Now, Mr. Evans makes nearly identical allegations with one substantial addition – the information relating to the changes of the Administrative Committee structure and the Novolex CEO's allegedly unilateral actions with respect to the SIP. (*Compare* Doc. # 97 *with* Doc. # 1). Defendants have again moved for dismissal of the entire action, but most of the parties' briefing has focused on re-litigation of the forfeited funds theory in light of the new allegations contained within the Amended Complaint. (*See* Docs. # 100, 104, 106).

      **1.**      **Standard of Review**

In evaluating a 12(b)(6) motion to dismiss, a court is called to assess whether the plaintiff has "state[d] a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). In making that assessment, a court should accept the plaintiff's allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "if the plaintiffs do 'not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed.'" *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc), (quoting *Twombly*, 550 U.S. at 570) (cleaned up), *cert. denied*, 572 U.S. 1100 (2014).

To give rise to plausibility, the complaint must contain factual allegations that speak to all of a claim's material elements "under some viable legal theory." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In short, a claim cannot survive a motion to dismiss if the plaintiff has not pleaded sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim. *See id*. The plaintiff's burden in doing so is low, though, as a court should "construe the complaint in the light most favorable to the plaintiff" in evaluating a motion to dismiss. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). However, "mere conclusory statements[] do not suffice," and legal conclusions "must be supported by factual allegations." *Ashcroft*, 556 U.S. at 678.

### 2. Matters Outside the Pleadings

As a threshold matter, the Court notes that it will address the language of the SIP in this Order, even though the SIP itself was not attached as an exhibit to the Amended Complaint. Usually, adjudicating a motion to dismiss, the Court is only permitted to consider the complaint and attached exhibits, items in the record, and "documents that a defendant attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2011) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). If documents beyond that scope are considered, the motion to dismiss will be converted to a motion for summary judgment. *Spencer v. Grand River Nav. Co., Inc.*, 644 F. App'x 559, 561-62 (6th Cir. 2016) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

7

Here, the SIP is contained in the record (Doc. # 11), it is referred to repeatedly in the Amended Complaint (*See generally* Doc. # 90), and it is obviously central to the claims at issue.  Thus, the SIP can be considered at this stage without converting the Motion to Dismiss into a motion for summary judgment.  Defendants have also attached a document showing an amendment to the SIP to their Motion to Dismiss.  (Doc. # 100-1).  While this amendment was not specifically mentioned, the Amended Complaint does reference a number of amendments made after Novolex acquired TWG from Newell (Doc. # 97 at 3 n.2), and Defendants purport the amendment to show that the Novolex CEO retained authority to reconfigure the SIP Administrative Committee.  (Doc. # 100 at 9).  Because Mr. Evans' arguments in the Amended Complaint relate to the Novolex CEO's authority to reconfigure the Administrative Committee (or lack thereof), the attached amendment is central to his claim and will be thus considered here to the extent that it is cited in briefings on the Motion to Dismiss.

However, the Court's consideration of additional documents beyond the Amended Complaint ends with the SIP and the attached amendment.  To the extent that Defendants have attached Administrative Committee meeting minutes to their Reply in support of their Motion to Dismiss (Doc. # 106-1), those documents will not be considered.  Defendants purport in their Reply that the meeting minutes "directly contradict and disprove" Mr. Evans' claims, and further posit that the minutes can be considered because they are central to Mr. Evans' claim and are referenced in the Amended Complaint.  (Doc. # 106 at 6).

Defendants may be correct as to the minutes' relationship to the Amended Complaint, but their argument fails because these documents are first being introduced

in Defendants' Reply.  The law is clear that matters outside the pleadings may only be considered at this stage without converting the motion when they are attached to a defendant's motion to dismiss.  *Bassett*, 528 F.3d at 430 (citing *Amini*, 259 F.3d at 502).  Defendants' Reply in support of their Motion is not their Motion to Dismiss, and in the Sixth Circuit, "an argument first presented to the court in a reply brief is waived." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).  While the documents may have been appropriately considered if they had been attached to Defendant's Motion to Dismiss, they were not, and the documents attached to Defendants' Reply will accordingly be discarded.

### 3. *Breach of Contract: Revision Theory*

As previously stated, the Amended Complaint contains one count of breach of contract, which is supported by two legal theories: first, that Defendants incorrectly withheld the forfeited Wurzburger funds (hereinafter "forfeiture theory"); and second, that Defendants wrongfully withheld remaining incentives owed to Mr. Evans, independent of the forfeited funds, after improperly revising the SIP's performance targets (hereinafter "revision theory").  (Doc. # 97 at 6).  In terms of specific allegations, the Amended Complaint contains the same facts as the original Complaint, but adds facts relating to forfeited SIP money and the Novolex CEO's authority to decide whether forfeited funds are redistributed – which relate only to the forfeiture theory, and not the revision theory. (*Compare* Doc. # 97 with Doc. # 1).  The parties have accordingly concentrated briefings on the forfeiture theory.  (*See* Docs. # 100 and 104).

The Court has already determined that the original Complaint contains sufficient facts to survive a 12(b)(6) motion (Doc. # 39 at 12), and the Court here sees no reason

to alert its previous ruling. First, the Amended Complaint contains no fewer factual allegations than the original Complaint on the revision theory (*compare* Doc. # 97 with Doc. # 1), and the law as stated in the Court's May 2021 Order has not changed. (Doc. # 39 at 12). Second, Defendants have raised no new arguments in their Motion to Dismiss the Amended Complaint related to the revision theory (Doc. # 100), and they do not seek to relitigate the issues raised in their first Motion to Dismiss. (*Compare id. with* Doc. # 12 at 7-8).

In addition to the facts related to the CEO, Defendants have identified one other change in the Amended Complaint – additional references to money owed to other participants in addition to Mr. Evans. (Doc. # 100 at 13). However, in identifying that change, Defendants do not request a dismissal of the entire claim – only "[t]o the extent that [the] claim relies on the treatment of other participants to support the claimed injury of Plaintiff[.]" (*Id.*). The Court will decline to do so, as the additional reference to other participants does not detract from the sufficiency of the other facts, as previously determined in May 2021. (Doc. # 39 at 12). Insofar as Defendants are concerned that "the treatment of other eligible participants has no bearing on any payment to Plaintiff," the Court notes that Mr. Evans remains the sole plaintiff in this lawsuit, and at the motion to dismiss stage, the Court cannot examine the sufficiency of the evidence – only the sufficiency of the allegations contained in the Amended Complaint.

The Court further recognizes that it is "well-settled that an amended complaint supersedes an original complaint," precipitating a "practice of considering only the operative complaint" in evaluating a motion to dismiss. *Freeman v. Sullivan*, 954 F. Supp.2d 730, 741 n.1 (W.D. Tenn. 2013) (internal quotations omitted). However, when

an amended complaint contains the same allegations as an original complaint, and those allegations were previously determined to be legally sufficient, the Court can defer to its previous ruling as a matter of judicial economy when no new arguments have been raised by Defendants and no operative facts have been omitted from the Amended Complaint. *See, e.g.*, *Wilson v. Buckeye Steel Castings Co.*, No. 2:99-CV-1300, 2001 WL 1681130, at *4-5 (S.D. Ohio Sept. 25, 2001) (holding that because the "Amended Complaint presents no additional facts in comparison to [the] original complaint," the court "finds no basis upon which to alter its previous ruling that [the] claim survives a Rule 12(b)(6) motion.").

Accordingly, the facts related to the revision theory are sufficient to proceed to discovery for the same reasons as stated in the Court's May 2021 Order. (Doc. # 39). For those reasons, the breach of contract claim will remain in and proceed through discovery insofar as it relates to the revision of performance targets which caused Mr. Evans to not be paid "the balance of the incentives earned by the eligible participants, including Evans, under the SIP." (Doc. # 97 ¶ 38(ii)).

### 4.     *Breach of Contract: Forfeiture Theory*

The primary issue raised in the current Motion to Dismiss is the additional allegations related to the forfeiture theory (Doc. # 100) – which the Court previously dismissed, and which Mr. Evans seeks to revive in his Amended Complaint. (Docs. # 39 and 97). In furtherance of that effort, the Amended Complaint alleges that Novolex "gutt[ed] the Administrative Committee and allow[ed] its CEO to unilaterally make decisions in place of the Administrative Committee that benefited only Novolex [and] did not protect [TWG] or the Participants[.]" (Doc. # 97 ¶ 28). More specifically, the decision

11

at issue is the Novolex CEO's alleged decision (or lack thereof) not to redistribute funds forfeited by Wurzburger back into the award pool for redistribution to other SIP participants, including Mr. Evans.  (*Id.* ¶¶ 26, 31).  Mr. Evans alleges that the Novolex CEO decided "no later than July 2018" that no forfeited funds would be returned" to other SIP participants (*id.* ¶ 24), and that in removing SIP participants from the Administrative Committee to do so (*id.* ¶ 23), the CEO and Novolex violated the implied covenant of good faith and fair dealing (*id.* ¶ 29), and breached the SIP as a contract.  (*Id.* ¶ 6).

In their Motion to Dismiss, Defendants argue that the recast claim should be again dismissed because Novolex was not required to return forfeited funds to the award pool (Doc. # 100 at 6), that the Novolex CEO acted within his authority in reconfiguring the Administrative Committee (*id.* at 8), and that Mr. Evans' new allegations do not give rise to a breach of the implied covenant of good faith and fair dealing.  (*Id.* at 10).  Mr. Evans has countered that his new allegations are focused on "a plan, concocted by Novolex's CEO in a vacuum, to retain for Novolex money Newell provided to pay the SIP Participants," (Doc. # 104 at 6), and that in allowing its CEO to act unilaterally, Novolex's actions violated its duty of good faith and fair dealing.  (*Id.* at 6-7).

Mr. Evans' focusing of his new allegations is helpful for purposes of judicial economy.  For the same reasons as discussed with respect to the forfeiture theory, the Court is not inclined to revisit its rulings on identical allegations and identical legal theories in view of no changes in controlling law.  *Supra* part III.A.3.  Instead, the Court will address only the parts of the Amended Complaint which could ostensibly revive the previously dismissed forfeiture theory: those new allegations related to the Novolex CEO's actions. In other words, as acknowledged by Mr. Evans (Doc. # 104 at 5), the Amended Complaint

does not change the Court's prior ruling that "the terms of the [SIP] are not ambiguous, and therefore the committee was not required to return forfeited funds back to the Pool[.]" (Doc. 39 at 11-12).

Rather, the Amended Complaint seeks to allege that the Novolex CEO, not the Administrative Committee, breached the contract, as "the Novolex CEO's decision to redirect funds earned by Plan Participants and prepaid by Newell is the basis of the Plaintiff's claim as pled in the Amended Complaint." (Doc. # 104 at 7). Thus, the relevant question here is simple: whether the Amended Complaint plausibly alleges that the Novolex CEO's actions with respect to the forfeited funds give rise to "a viable legal theory" to support a breach of contract claim. *Eidson*, 510 F.3d at 634. After reviewing the Amended Complaint and the permitted additional materials beyond the complaint, the Court has determined that the Amended Complaint does <u>not</u> give rise to any viable legal theory for breach of contract – neither by a standard breach theory nor by a breach of the implied covenant of good faith and fair dealing.

To begin with a standard breach theory, in Kentucky, a complaint alleging breach of contract "must state 'the contract, the breach, and the facts which show the loss or damage by reason of the breach.'" *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 538 (6th Cir. 2008) (quoting *Fannin v. Com. Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952)). The Court has already determined that the SIP "permitted the [Administrative Committee] to redistribute award funds, but did not require it to do so" – in other words, that the lack of award fund redistribution alone does not constitute a breach of the SIP. (Doc. # 39 at 11). However, unfortunately for Mr. Evans, the addition of facts related to Novolex's CEO and his actions with respect to the Administrative Committee does not

13

change that conclusion, especially as those facts relate to a breach of contract claim under the SIP's plain language.

Even though Mr. Evans fervently argues that the Court's conclusion that the Administrative Committee had "wide latitude to make decisions related to the administration of the SIP" does not extend to decisions made by the Novolex CEO, he does not establish *how* the CEO's actions breached the plain terms of the SIP. (*Id*.); (Doc. # 104 at 5). While he is correct that "the Court did not hold that the Novolex CEO (and not the Administrative Committee) could unilaterally determine the fate of the forfeited awards," the fact remains that the SIP does not require redistribution of funds. (*Id.*).

Furthermore, the language of the SIP itself does not support an argument that the CEO's involvement in the Administrative Committee's decision making was improper or in any way beyond the contract's terms. In Kentucky, as stated in the Court's previous Order, "words in a contract are to be given their 'ordinary meaning as persons with ordinary and usual understanding would construe them.'" *Sunny Ridge Enters, Inc. v. Fireman's Fund Ins. Co., Inc.*, 132 F. Supp. 2d 525, 526 (E.D. Ky. 2001) (quoting *Transp. Ins. Co. v. Ford*, 886 S.W.2d 901, 904 (Ky. App. 1994)). In two separate sections, the words contained in the SIP have clear and unambiguous meanings that do not support the new allegations raised in Mr. Evans' Amended Complaint.

First, the SIP provides at Section 2 that "The CEO may change the members of the Administrative Committee in the CEO's sole discretion." (Doc. # 11 at 2). Accordingly, to the extent that Mr. Evans alleges that Novolex "gutting the Administrative Committee" by the "systematic removal from the Administrative Committee of all SIP participants. . .

[which] vested effective control of the two person 'committee' in the Novolex CEO," those allegations do not plausibly give rise to a breach of contract claim because the CEO was directly authorized by the SIP to change the committee's composition. (Doc. # 97 ¶¶ 23, 28). The CEO utilized that authority in the amendment attached to Defendants' Motion to Dismiss and reconfigured the Administrative Committee's membership. (*See* Doc. # 100-1).

Second, the SIP is clear in Section 5 that "All determinations, interpretations or other actions of the Administrative Committee shall be subject to approval of the CEO of Jarden." (Doc. # 11 at 4). As Mr. Evans wrote in his Amended Complaint, Novolex assumed Jarden's role in administering the plan from Newell (Doc. # 97 ¶ 15), and Mr. Evans also directly referenced Section 5 in his Amended Complaint. (*Id*. ¶ 27).

Because all "determinations, interpretations, or other actions" of the Administrative Committee were subject to the approval of the Novolex CEO (Doc. # 11 at 4), it is wholly implausible that any "unilateral decision making" by the CEO with respect to the Administrative Committee would amount to a breach of the SIP as a contract. Even if, as Mr. Evans contends, the forfeited funds would have been returned to the SIP pool "had there been a functioning Administrative Committee," nothing in the SIP would have prevented the Novolex CEO from then vetoing that decision. (Doc. # 97 ¶ 31).

To the extent that Mr. Evans' theory rests on the timing of the CEO's decision (Doc. # 104 at 6), those allegations likewise fail to plausibly support a breach of contract claim. Nothing in the SIP requires the Administrative Committee to take any certain deliberative process (*see* Doc. # 11) – and otherwise, if the Novolex CEO indicated that he would have disapproved of the forfeited funds being redistributed, it makes common sense that

15

the Administrative Committee would have acquiesced instead of making the redistribution to force the CEO's veto of its decision. In other words, nothing in the SIP suggests that even "a plan, concocted by Novolex's CEO in a vacuum, to retain for Novolex money Newell provided to pay the SIP Participants" would have amounted to a breach of contract. (Doc. # 104 at 6). In fact, the SIP suggests otherwise, that such a "plan" would have been within the bounds of the CEO's duties under the contract to unilaterally approve or disprove of all the SIP's activities. (*See* Doc. # 11).

Lastly, the Court also notes that Mr. Evans' recast claim fails to plausibly support a breach of contract through the implied covenant of good faith and fair dealing. As Mr. Evans himself concedes, "a party cannot breach the implied covenant of good faith and fair dealing if it is simply exercising its rights under the contract[.]" (Doc. # 104 at 8). Mr. Evans further writes in his Response that "[f]or Defendants to be correct in asserting that [his] breach of the implied covenant of good faith and fair dealing claim fails . . . the SIP would have had to provide that Novolex or its CEO ha[d] the authority to unilaterally make decisions. Obviously, the SIP contains no such language." (*Id.*). Mr. Evans then further states that "In fact, it provides for the opposite," and then he quotes from the Amended Complaint referencing Section 5 of the SIP. (*Id.*) (quoting Doc. # 97 ¶ 27). However, in his Response and in the Amended Complaint, Mr. Evans omits the most important sentence in Section 5: "All determinations, interpretations or other actions of the Administrative Committee shall be subject to approval of the CEO[.]" (Doc. # 11 at 4). That sentence unequivocally bestows the CEO with "the authority to unilaterally make decisions," and thus, by Mr. Evans' own logic, his claim fails, as such an authority is incompatible with a breach of the implied covenant of good faith and fair dealing.

16

But even more importantly, Mr. Evans' logic is aligned with the law of the Sixth Circuit, which has written that:

> Where the contracting party complains of acts of the other party that are specifically authorized in their agreement, we cannot see how there can be any breach of good faith and fair dealing. Indeed, it would be a contradiction in terms to characterize an act contemplated by the plain language of the parties' contract as a bad faith breach of that contract.

*La Quinta Corp. v. Heartland Props., LLC*, 603 F.3d 327, 338 (6th Cir. 2010) (internal quotations omitted).[1] For these reasons, Mr. Evans' Amended Complaint fails to revive his breach of contract claim with respect to the forfeited award funds, and this case proceeds with the same singular live claim as before the filing of the Amended Complaint.

    **B.**    **Motion for Leave to Seal a Document (Doc. # 105)**

As previously discussed, the documents at issue in Defendants' Motion for Leave to Seal a Document were not considered in the adjudication of the Motion to Dismiss. *Supra* part III.A.2. Accordingly, Defendants' Motion for Leave to Seal a Document (Doc. # 105) will be **denied as moot** and the documents contained within Doc. # 108 will be **stricken** from the record.

**IV.**    **CONCLUSION**

Accordingly, **IT IS ORDERED** that:

    (1)    Defendants' Motion to Dismiss (Doc. # 100) is **GRANTED IN PART**;

---

[1] In *La Quinta*, the Sixth Circuit was applying Wisconsin law and quoted a Wisconsin court in the excerpted passage. 603 F.3d at 338 (quoting *M&I Marshall & Isley Bank v. Schlueter*, 655 N.W.2d 521, 525 (Wis. Ct. App. 2002). However, the difference in jurisdictions is irrelevant, as Kentucky law supports the same conclusion. *E.g.*, *Travelers Ins. Co. v. Corporex Props. Inc.*, 798 F. Supp. 423, 425 (E.D. Ky. 1992) ("Although it is recognized that implied in each contract is a covenant of 'good faith and fair dealing,' such a covenant does not preclude a party from enforcing the terms of the contract. It is not 'inequitable' or a breach of good faith and fair dealing in a commercial setting for one party to act according to the express terms of a contract for which it bargained."); *Hunt Enters. v. John Deere Indus. Equip. Co.*, 18 F. Supp. 2d 697, 700 (W.D. Ky. 1997).

17

    (a)    Plaintiff's Amended Complaint (Doc. # 97) is **DISMISSED** insofar as it alleges a breach of contract based on "the redistribution of the forfeited pro-rated SIP bonuses" (*id.* ¶ 38(i));

    (b)    Plaintiff's breach of contract claim based on "the balance of the incentives earned" but not paid after revised performance targets will **PROCEED** in accordance with the Third Amended Scheduling Order recently entered at Doc. # 117;

(2)    Defendants' Motion for Leave to Seal a Document (Doc. # 105) is **DENIED AS MOOT**;

    (a)    The Clerk of Court is accordingly **DIRECTED** to **STRIKE** the proposed sealed document (Doc. # 108) from the record.

This 30th day of March, 2023.

Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Cov2020\20-98 MOO re MTD.docx